All rise. The judges of the United States Court of Appeals for the Ninth Circuit. Hear ye, hear ye. All persons having business with the Honorable of the United States Court of Appeals for the Ninth Circuit will now draw near. Give your attention and you will be heard. God save these United States and this Honorable Court. Thank you, Madam Clerk. Good morning. Welcome to the Ninth Circuit. Welcome to our courtroom. We're delighted to have people back inside. My name is Morgan Christen. I'm one of the judges on the Ninth Circuit Court of Appeals. My chambers are in Anchorage, Alaska. And I'm delighted to be here in San Francisco this week with my colleague, Judge Bress, whose chambers are right here. And we want to thank and welcome Judge Lynn, who's joining us as a volunteer, which we really appreciate, given that she has a very, very busy schedule of her own. She's here helping us out this week on our calendar. She's here from Texas. Just a bit of housekeeping before we begin. We have three cases we're going to submit today and for which we will not hear oral argument. The first is 16-71208, Singh v. Garland. The second is 17-70772, Guzman-Dominguez v. Garland. The third is 18-71387, and that is Ake v. Garland. The first case on the calendar for which we will hear argument is National Railroad Passenger Corp. Those case numbers are 21-15816 and 21-15825. Counsel, if you could give me one second to catch up to you. I want to make sure I have my notes ready. Okay. Good morning, Your Honors. May it please the Court. Deputy Attorney General Kristen Liska arguing on behalf of the defendant appellants here. I would like to reserve four minutes of my time for rebuttal. Sure. Just keep track of the clock there. I will. Thank you. The Challenge California Act is not preempted, nor is it a violation of the Dormant Commerce Clause. As to preemption, Congress understood and intended the phrase sickness benefits under a state sickness law to refer to benefits of the type that cover situations the RUIA's leave covers, namely coverage when an employee is unable to work due to illness, injury, or pregnancy for longer periods of time. Plaintiffs have pointed to no contemporaneous sources that suggest that the phrase had a different plain meaning at the time, and the context reinforces defendants' reading of the statute. So what is your argument? I mean, you seem to be saying that the structure of the benefits, of the sickness benefits, has to be the same as what the federal law provides. What if there's a minor difference between the structures and the disability benefits look a little bit different? Would it not preempt just because of that minor difference? Our argument, Your Honor, is that the benefits that are preempted cover the same sorts of situations, so it's less about the structure, per se, and more about what situations the benefits are intended to cover. The RUIA covers longer-term situations where an employee is unable to work. The California Act covers all sorts of things, including routine care, such as getting your teeth cleaned. So it's less about whether, even if a leave covered a short-term disability situation that was one day longer or shorter, we would argue it would still be preempted. Right. I guess the difficulty is the... I think you've accurately described the coverage of the two laws. The question, then, is, is that really what the preemption provision is accomplishing? Because it seems to be written in language that's not tied to the particular form of benefits that the RUIA is providing. I think the ultimate question here is really what the statutory meaning of that phrase, sickness benefits under a state sickness law, is. And I think looking to the structure and context of the statute, looking at the definitions in it, the definition of benefits, the definition of a day of sickness, looking to the historical context that only two states had paid leave laws at the time, both of which provided short-term disability insurance, all of that sort of indicates that Congress understood and intended that phrase to have a narrow meaning. And plaintiffs haven't pointed to anything contemporaneous from that time that indicates that the phrase sickness benefits had the sort of broad understanding that they ascribed to it. But, I mean, from the core of the California law, if somebody has an injury or a sickness that causes them to be out of work, why is that not a sickness benefit under a sickness law? I would push back that that's what the California law does, because it covers a wide variety of situations where an employee is not unable to work due to illness. For instance, an employee who, as I mentioned, goes in to get her teeth cleaned. An employee who goes in for an annual physical. An employee who goes in to get a vaccine. But it also covers sickness benefits. It does cover periods where an employee needs to be out to care for her own health. That doesn't necessarily mean it reaches beyond simply situations where an employee is unable to work. It sort of provides benefits that are complementary to, but not duplicative of, what the RUIA provides. Well, the only way it's complementary to and not duplicative of is if you look at the durational component, right? Whether it's long-term or short-term. If you're talking about the employee's own sickness benefits. Isn't that right? In some ways, but not entirely. I mean, it is duplicative in the sense that the California Act only requires three days of minimum leave, whereas the RUIA requires a five-day waiting period. But it also does cover situations that are just wholly not covered by the RUIA. Routine preventative care, taking care of family members. And so, counsel, forgive me, but that's the problem. I think you're just missing my question. My response or my comment really was going to, you know, to the extent it is talking about, because it also covers an employee's own leave for sickness, right? So the only way that's not redundant, I think, is if you look at the durational component. Yes? Yes, that's correct. Okay. How does it help you that there were just two states? You've mentioned that several times, and you mentioned it in your briefing as well. Could you just flesh that out for me? Of course, Your Honor. In order to understand what Congress meant that phrase to mean, I think it's useful to look to the historical context, because phrases can only have meaning in the historical moment in which they take place. And that there were no laws like the California Act on the book, and would not be for decades, cuts against the idea that Congress understood sickness benefits to include this sort of leave, but rather was trying to establish uniformity as to the type of benefits it provides, which were the leave laws on the book at the time. Well, go ahead, please. I guess on the uniformity point, I mean, it seems like the other side has a fair argument there too, which is that we're railroads, we operate in every state practically, and so the whole idea here was to give us one set of rules, and now we're being asked to comply with both that and the California set of rules, and that's sort of what Congress was trying to avoid. Congress was trying to create uniformity, as we would argue, as to the type of benefits it was providing. And, again, it is entirely possible for the California Act and for the railroad benefits to coexist without being duplicative of one another. There aren't many situations where the railroad would be paying, or a person would qualify for both types of leave at the same time, so it's not as though the railroad would have double liability. For instance, California also has a short-term disability insurance law, which the labor commissioner has agreed that railroads are exempt from, so it's not a situation where there's, for instance, two short-term disability insurance coverages that a railroad would need to pay for. However, this is a different type of leave. Turning to the Dormant Commerce Clause, Your Honor, plaintiffs have never argued that they meet their burden under the Pike balancing test. They have instead pointed to a statement and a preemption provision and argued that that conclusively resolves the issue here, but they have never cited a case that says that a statement and a preemption provision can resolve a Dormant Commerce Clause violation or establish that there is a violation under the Dormant Commerce Clause. And the fact that they have never put forth any evidence of a substantial burden is sufficient to find that their claim is against them, that that would be sufficient to show that this law does not violate the Dormant Commerce Clause. And the district court erred with respect to that aspect of its decision as well. Can we go back just to the preemption? Of course, Your Honor. So I know we have the First Circuit decision out there. Is that the only other circuit that's grappled with that issue? As far as we know, yes. On the argument that you're making about essentially the types of benefits, that the California law provides a different type of benefit than the RUIA, would that put us into conflict with the First Circuit? It probably would, Your Honor, but we would respectfully disagree with that circuit's analysis. They start their analysis by focusing on what questions that the benefits here sought to answer. We would argue that the starting place is what the meaning of the phrase sickness benefits under a state sickness law is. And that once that phrase is defined, then the question becomes whether or not this law is a sickness benefit, which is slightly different than how the First Circuit's report is analysed. If the statute covered only what a layperson would call sickness benefits for the individual employee, same structure, but only that, nothing else, not preventive care, not care for family members, not domestic violence issues, would you still be taking the same position about the statute? Just to clarify, you mean if the statute only provided a minimum of three days for one only? Exactly what it provides for an employee who is ill, but only that, nothing more. We would take the same position, Your Honor, simply because the leave covers a different set of circumstances than what the RUIA does. Wait, wait, wait. Can you unpack that? How is it different if it's the hypothetical that Judge Lynn has described? Is it just the durational component? It's not so much the durational component, Your Honor. It's that the California leave is about speaking to situations that include routine care or taking care of one's own health generally, while the Railroad Unemployment Act's leave speaks to longer-term inability to work. Looking at sort of the context in which you— Absolutely, you're losing me right there. The federal statute's phrase is just really broad, and so you're going to have to help me out on this if you're going to gain some traction on this. I'm failing to see the distinction you're trying to draw. I'm not trying to give you a hard time, but I don't get it. What's the difference? No, I understand, Your Honor. I think that the phrase has a very broad reading in a way that is intuitive to a person today, but I think if you look back into the time period of 1946, it's not clear that the phrase, for instance, benefits. We cite historical dictionary definitions from that time period. The word benefits does not have the sort of meaning that it has in later dictionaries, like what plaintiffs cite. So I think that this is really best understood as a term of art, not as a phrase that has a sort of plain meaning. And plaintiffs, again, point to nothing that shows the plain meaning of this phrase. In that time period, it was what they ascribe it to. Does it work with the statute, though? Because the statute treats as sickness things that are also physical injuries. It includes pregnancy. It includes within the phrase sickness a lot of things that have to do generally with health. It does, Your Honor. But it includes them within the context of being unable to work for an extended period of time. And looking at the sort of history of this statute, it was passed and added on to an unemployment benefits law. And there's a lot of discussion about how, you know, looking at the legislative history, being unable to work because there was no job is similar to being unable to work because of illness or injury, that there were concerns that people who were unemployed because no job was available who got injured would lose their benefits. And so it's the context and, for instance, the definition of a day of sickness, the fact that it encompasses a waiting period of five days, implies that they're referring to longer-term illnesses, not to a cough or to a cold, or to something that really just takes a day of your time. All of this, you know, again, suggests that sickness benefits had a sort of term of art understanding, and it's referring to sicknesses of a longer duration, not simply being out one day because you are under the weather. So can you talk just for a few seconds to leave your time about the issue of severability? Of course, Your Honor. To the extent that the court would agree that coverage of leave for one's own illness is preempted, the remainder of the statute is severable. It meets the three requirements for severability under California law. It's grammatically severable in that removing the language referring to one's own health leaves the statute grammatically intact. It is functionally severable in that the remainder of the Act will continue to serve and operate without it. People can still take leave off for the allowed purposes under the Act. And it is volitionally severable. There is every indication in the legislative history that Congress would have wanted the remainder of the Act to be passed, that it would have wanted railroad employees to have days to take care of the health of their family and for issues related to domestic violence. Well, if we were to just to kind of go through those other buckets, I mean if we were to say that one's own sickness is preempted, is there any real distinction between one's own sickness and one's own preventative care under the statutory scheme? I would say yes in that sickness is defined with respect to inability to work, and so preventative care is not a situation where someone is unable to work because of an illness or injury. It's going in for health care to keep yourself healthy, but you are still, you know, if I'm out getting my teeth cleaned, I'm still fully capable and able to work. I just can't schedule a doctor's appointment or a dentist's appointment on the weekend. Do you want to reserve the rest of your time? I would. Thank you, Your Honor. You bet. We'll hear from opposing counsel, please. Good morning, Your Honors. Donald Monroe for the Railroads. In order to resolve the case before you, this court does not need to determine what is or is not a sickness benefit, either in general or with respect to any specific application in the California Act, and that's because under the plain language of 363B, the scope of preemption, the domain that's preempted, is not just sickness benefits but sickness laws, and a sickness law can include a variety of terms that are not benefits at all. You can have accrual rules. You can have carryover rules. You can have any number of things that are not benefits. I think that's right. It's really broad language. What do we do about the fact that this encompasses, for example, restraining orders, domestic violence circumstances, something I cannot believe that would have been contemplated at the time. So what do we do about that? The best way to address that, Your Honor, is to recognize that the way California constructed this law and included all of these provisions was to put them in what is a sickness law. So they've embedded provisions that where you— Did you say, sorry, what was your word, invented? Embedded. Embedded, thank you. Embedded in a sickness law. And so that takes care of the problem of things that you can debate with— No matter what they pack in there? Yes, because it takes care of two problems, Your Honor. So it takes care of sort of the bizarre or unlikely hypothetical where they threw in jury service or— Leave to go vote. Yes, exactly. And so— You call it all a sickness benefit? If it's in a sickness law, by which I would define as a law that is available for purposes of sickness, then yes, it's preempted. But that's available, my hypothetical is available because it's voting day. Correct, Your Honor. But if they've put it in a sickness law— Anything. Anything, because it is the fact that it is a sickness law that means you can't apply it to railroad. Are you saying the title is dispositive? No, Your Honor. I'm saying that it's the availability of the leave for sickness. It's the design of the statute that defines it as a sickness law. Let me tweak the hypothetical. You're really losing me on this. Sure. Let me try it this way, Your Honor. I mean, what makes it a sickness benefit? If there are several provisions—and I'll get out of your way to let you answer the question, but you've said you're not relying on the title. So if there are several provisions and some of them really look and smell and feel like sickness benefits but others do not, why do we treat the whole thing like a sickness benefit? Well, here, just to clarify, that's not the design of the statute. This is a hypothetical, and you're the one who invited it by taking the position you took. So you got it. We're right ahead. Let me try it this way. Let me tweak the hypothetical to illustrate what I mean. Suppose you— You're changing my question. I'm trying to sort of explain it from a different perspective, Your Honor. Suppose the leave, the jury service or the voting rights or the other form of leave, was added to a law that's identical to the RUIA in every respect. So the state law provides for the leave that you're suggesting, but it's otherwise indisputably a sickness law. Well, that law, if it's applied to railroads, the RUIA is no longer exclusive. And that's my point, that in order for the sickness law scope of preemption to be applicable, states can't put things that you might debate are not sickness-related into a sickness law. But I concede that if they pass those kinds of provisions separately, if they don't put them in a sickness law, well then I probably wouldn't be here arguing RUIA preemption. What your argument depends on is a pool of time that can be used for various things including sickness. I think if it was a separate restraining order law that says you get two days off every year to go seek restraining orders, I don't see how the RUIA would preempt that. It's the fact of it being put into a sickness law and for the same pool of time to be used across all things. For the same pool of time being the operative provision. So that strikes me as a severability problem. We can't tell how much time the lawmakers would have fashioned had they allowed just leave for voting under my hypothetical. And I would really appreciate it if you would entertain my hypothetical. Isn't that the problem? That's a severability issue. No, Your Honor. I don't think it is that it's a severability issue. It's the fact that it is a unitary block of leave. That you want to call a sickness law. But my hypothetical is it's got several different types of provisions in it. Let me try this one. Judge Bress, I think this comment was helpful to me. If we view it as one block of time and that one block of time can be used for several different purposes, one of which is sickness, then I think your argument has some traction. Otherwise, I'm failing to understand your point. That is exactly what this federal benefit is. I know, sir. I was trying to get you to engage in a hypothetical, but I've given up on that now. I don't think you're going to do it. Let me try again, Your Honor, because I do want to answer your question. There are certainly benefit designs that you could conceive of under state law that would not be preempted by the RUIA. That's not this case. This case involves the unitary benefit. So it's the easy case because you have it embedded in a sickness law. You have a unitary block of leave that's available for sickness, making it a sickness benefit. And you have state legislative findings that relate this to sickness. But isn't that all another way of saying you have to go to the severability analysis? I have the same question. It seems like you could look at it that way too. Well, it would be a clue that all three of us have asked the question. So we want the answer. I mean, we really are trying to engage in a conversation with you, sir. And if you're making a different distinction, truly it is, I'm not seeing what it is. I'm not sure that I'm going to be able to articulate this any better than I already have, Your Honor. It's the fact that all of the time is available for sickness. I think we're saying the same thing. That's the problem. And we can't know how that would have been fashioned differently if all the time were available for purposes that are not sickness, whether it's voting or domestic violence restraining orders or anything else. And that strikes me as a severability problem is all. Maybe the failing is mine because I can't articulate it any more clearly than that, but that's how I'm envisioning your position here. So I think maybe it's sort of the order of argument. So the way I conceive of this is that first you determine whether it's a sickness law, and then you look at whether it's a sickness benefit. And only if you conclude that there is a piece of this that is neither a sickness law nor a sickness benefit would you then go on to severability. Right. I appreciate that. And I think if I represented your client, I might be in the same position. But that's because you want everything to be a sickness law. I mean, that is certain in your client's best interest. But we're pushing back on that premise because, you know, hence the hypothetical about packing in other purposes. And Judge Lynn's question about are you relying on the title to decide that it's a sickness law, you've been very clear you're not relying on the title. And so then we're just pushing back about so if there's a bunch of different purposes in there, how do we know it's a sickness law? And it seems to me the answer is because it's a unitary block of time. And we can't know how they would have divided it up differently. Yes, I think that's correct, Your Honor. But what I would suggest to the court is that that makes it a sickness benefit. I understand. So you don't need to reach the question of severability. Right. And if there were a voting rights group in here, they might say, oh, that's a voting rights benefit. But I don't think we need to talk about this anymore. I think you've answered the question, and I appreciate your patience with our questions. Can I ask you, Mr. Monroe, if there were a separate law that was called the family members sickness benefit law that said the only time off you're going to get is when your spouse or child is sick, would that be a sickness benefit under a sickness law? Lay this out. I mean, maybe this will help you. I mean, I view this as there's a couple different categories of things in here. There's your own sickness as an employee. There's your own preventative care. There's time off because somebody in your family is sick. And then there's this residual, this other category of things that really don't have anything to do with health in the most direct sense relating to domestic violence and stalking, and I view those as somewhat different. But how about just on the family member? I mean, if all this law, if all we have was a two-day off a year for family member sickness, is that a sickness benefit under a sickness law? Yes. Okay. So why do you say that, just to understand? Because the definition or the conception of sickness law under the RUIA is sufficiently broad to pick up those kinds of benefits. How do we know that? Because Congress used these sort of un-cabined, broad terms. So you're just looking at the statutory language being broad? Yes, Your Honor. I'm also looking, however, at legislative purpose behind that At 60% pay? At 60% pay. Right. So what about Judge Bress's hypothetical, and it only spoke to domestic violence? The domestic violence hypothetical is, I think it's the same answer. It would depend on the particulars of the text of the act and the design, but I would make the same argument. If it were just by itself, nothing else other than domestic violence, then no, it's not preempted by the RUIA. Oh, that was a hypothetical. Yes. No, I apologize, Your Honor. No, if it was just the legal implications of domestic violence, I would be here arguing preemption under a different federal statute, not the RUIA. I think I might have cut short your answer to Judge Bress's question about family member benefits. Well, the family member concept is sufficient, I think. It has a sufficient connection to the concept of sickness law and sickness benefit under the RUIA. And the state has said repeatedly, well, you have to look at this in terms of the historical context, and there were only these two states that had long-term disability laws. Well, I would contest their use of the canon of construction. I think they're overstating the reference. I think the rule really is that when Congress uses broad terms, the fact that it has unanticipated application, given changing times and circumstances, is the correct way to view it. Is the way – is sickness – I mean, when you hear sickness, you think I take a sick day. It can mean a lot of things. But your opposing counsel says, no, sickness means unable to work. Is that what sickness means in the context of the express preemption provision? No, Your Honor. Congress did not include any indicia of comparability. So, in other words, it didn't say anything in the preemption provision to indicate that the benefit preempted is equal in any way to the benefit provided. To the contrary, it suggests that any form of sickness law is going to be preempted. But just to finish my point, because I want to make sure the court is aware of this, it's just not true that sick leave of this kind is a modern conception. You can go back and look on Westlaw. There are literally dozens of state laws that provided sick leave to state employees. But statutory sick leave has been around since California had one in 1936. What happened in the – just on the First Circuit case, it went back to the district court. I don't know if you were counsel there or not. I was. Okay. Did that get appealed to the First Circuit again, or did it end in the district court? It's a strange set of circumstances, Your Honor. Massachusetts did not appeal Judge Gorton's second decision. The union intervenors did appeal in that case. It went up to the First Circuit, and we pointed out that there had never been a final judgment. And so the First Circuit dismissed the appeal, and since then literally nothing has happened. I expected the unions would go back to Judge Gorton and ask him to enter a final judgment. So there's no final judgment? He issued the second summary judgment opinion, but there's never been a separate piece of paper. Okay. I'm just wondering if there's going to be a Healy II out of the First Circuit at some point. I can't explain why it has taken years, Your Honor, for the unions to do anything. But Massachusetts has been clear, I think, that they're done. They're not seeking to appeal. So are you saying that the trial judge could just stop with looking at the words of the statute to determine preemption without doing a Pike analysis? Yes, Your Honor. I mean, my lead argument before Judge Mueller was that the third sentence of the RUIA informs the scope of preemption. So the reference to sickness laws having an undue burden on interstate commerce informs the statutory meaning of preemption. In the alternative, we argue dormant commerce clause. But I don't think the court needs to reach that if it concludes that the scope of preemption as written is broad enough to encompass a state sickness law, which this plainly is. Are these kind of challenges pending any other states? So you have Massachusetts, you have this case. Are there any other cases? I've spent more of my career than I would have thought on these issues, Your Honor. But we have been able to reach agreements or resolutions in other circumstances. So, for example, the state of Oregon has a law that has an express carve-out for railroads. The city of Chicago passed one that we obtained an agreement they wouldn't enforce against railroads. So there's been a smattering of these around the country. But for the most part, no, there's not a duplicative issue like this pending anywhere else. One last point. I just wanted to get in on volitional severability. It's the only aspect of severability I think I have time to address. The idea there that California has been pushing is, well, of course, California would want railroad employees to have at least this segment of the law rather than all of it. But the fact of the matter is that they've carved out whole groups of employees from having any benefit, including air carriers under the Railway Labor Act. That's in the California Act? Yes, it is, Your Honor. Anything further? Thank you, Your Honor. Thank you for your patience with our questions. You've reserved just under three minutes. Thank you, Your Honor. Just to respond to a few points that my friend on the other side raised. Starting with this idea that the preemption is of sickness laws or state sickness laws in its entirety, if you look at the language of 336B, it says in at least two places that it is making the exclusive provision for payment of sickness benefits for sickness periods, and that no employee shall have or assert a right to sickness benefits under a state sickness law. I think that that language is very clear that what is being preempted and excluded here is sickness benefits under a state sickness law, so that you cannot simply ignore the question of whether or not certain benefits are sickness benefits. That's an integral part of the preemption analysis. What do you do with the fact that just by design here, it's all the same pool of time that can be used for different things, including an employee's own sickness? We would agree with the court that that's a question of severability, that to the extent the court thinks there are some benefits in this law that are sickness benefits. The question then becomes whether such benefits are severable from the remainder of the law. Why would they be? Can you go through your severability analysis? Of course. Because it's a unified block of time. Yes. That's how the three of us seem to be. It's not like we huddled in advance on this, but I'm pretty focused on that for purposes of my scorecard. So could you explain to me how would we undertake the analysis? Yes. So the California law looks to three provisions. As to the grammatical severability provision, I think that it is clear that if you excise the parts— That's not your problem. Go ahead. I would also assume that the operability is not a problem as well, that the law would operate without sickness benefits in place. It's still easily possible for an employee to claim leave for other purposes, to care for one's family member. As to concerns about administrability, this is a concern that companies deal with all the time. Companies have policies in place wherever they have leave allowed for some purposes but not others to ensure that employees are taking leave for permitted purposes. They can apply those policies to the statute to ensure that the leave is used for a permitted purpose and not a preempted purpose. And then the final prong is the volitional severability. And the question there is not would Congress have picked two days or one day. It's would Congress have passed the remainder of the statute, which includes all three days, or would it have elected not to pass the statute had it known of the preemption? And I think if you look to the legislative findings here, Congress is pretty clear that it viewed having leave to care for family members as important. There's a legislative finding that when children are cared for by their own parents, they have better health outcomes, they recover faster, they are less likely to experience serious side effects from a disease or complications. And as to the domestic violence aspect, there are multiple legislative findings that those who suffer from domestic violence or stalking are more likely to lose their jobs and that it is important that they are able to have paid time off to take care of their own safety, to relocate, to move, to get a restraining order, to protect themselves and potentially their children and still have that economic security that is vital to their independence and safety while they're sort of extracting themselves from a dangerous situation. Thank you for your argument. Thank you both for your excellent arguments. Thank you, Your Honor. Very, very helpful. We'll take that case under advisement and move to the next case on the calendar, Harbor Performance Enhancement.
judges: CHRISTEN, BRESS, Lynn